# EXHBIT
# 5



# EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (the "**Agreement**"), executed by and between "**Company**," as defined in **Exhibit A**, attached to this Agreement and "**Employee**," an individual identified in Exhibit A.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, Company agrees to employ Employee, and Employee agrees to serve the Company as "**Title**," as defined in Exhibit A (the "**Employment**").

1. **DEFINITIONS AND INTERPRETATIONS**

    1.1 In this Agreement:

    **1.1.1** "**Company Policy(ies)**" means the policies and rules of the Company, as stated in the Handbook, as defined below, and elsewhere. Such Company Policies may be revised or modified at Company's sole discretion from time to time.

    **1.1.2** "**Intellectual Property**"/"**IP**" includes trademarks (whether registered or unregistered), patents, designs, design rights, utility models, copyrights, pending applications for any of the foregoing, the rights to apply for them in any part of the world, discoveries, creations, inventions or improvements upon or additions to an invention, confidential information, know-how, any research effort relating to any of the above mentioned, business names (whether registrable or not) and any similar rights in any country.

    **1.1.3** Words importing one gender include all other genders and words importing the singular include the plural and vice versa.

    **1.1.4** Any reference to a statutory provision shall be deemed to include a reference to any statutory modification or re-enactment of it.

    **1.1.5** The clause headings do not form part of this Agreement and shall not be taken into account in its construction or interpretation.

    **1.1.6** References in this Agreement to any clause, sub-clause, exhibit, schedule or annexure without further designation shall be construed as references to the clause, sub-clause, exhibit, schedule or annexure of this Agreement so numbered.

    **1.1.7** The exhibits attached hereto form part of this Agreement.

    **1.1.8** The Company "**Handbook**" is the handbook that governs, without limitation, the conduct of employees, and is hereby incorporated into this Agreement by reference.



## 2. TERMS OF EMPLOYMENT AND NOTICE

**2.1.** The Employment will be subject to the Employee obtaining the necessary visa and/or work permit, where applicable, at Company's costs.

**2.2.** The Employment shall commence on "**Commencement Date**," as defined in Exhibit A, or any other date as mutually agreed between the parties.

**2.3.** **Place of Employment/Territory:** Employee shall work in the **"Place of Employment"** as indicated in Exhibit A, or, in the case of Customer Support or Sales Employees, employment/assignment shall be in the "**Territory**" indicated in **Exhibit C.**

**2.4.** **Duties:** Employee shall perform duties for the Company in accordance with the "**Job Description**," attached to this Agreement as **Exhibit B**.

**2.5.** **Other Duties:** The Company is entitled to require Employee at any time, to work in another area of duty and/or responsibility which is suitable to his/her skills and qualifications. Additionally, Company may request Employee to work at another location. Notwithstanding, Company acknowledges that there shall be no reduction of Employee's remuneration under Section 3 of this Agreement and further, that the Company shall pay to the Employee a salary in accordance with Company Policy.

**2.6.** **Further Obligations to Company/IT Policy:** Employee shall observe the policies and instructions of the Company, as described in the Handbook, as well as the directives of Employee's superiors. Further, Employee acknowledges and agrees to abide by Company's regulations about the use of electronic communication and data processing devices like computers, software, hardware, internet, intranet, email, etc., as detailed in the "**Global IT Security Policy**". In accordance with the Global IT Security Policy, Employee acknowledges:

**2.6.1** Company's rules with regard to any use of Company's IT infrastructure (e.g., telephones, e-mail accounts, networks, etc.) that is outside the course of conducting Company's business;

**2.6.2** Company's strict prohibition of the installation of any personal software on any of the Company's computers;

**2.6.3** That Employee may be dismissed for any violation of the Global IT Security Policy.

**2.7.** **No Conflict of Interest:** During the term of the Employment, Employee shall not, without the written approval of CEO, directly or indirectly engage in any work (whether paid or gratuitous) or business (whether as owner, partner, consultant, employee, agent or otherwise), that is substantially competitive with the business of Company, or that will put Employee in actual or potential conflict of interest with Company. Employee, in discharging Employee's duties to Company, shall always act in good faith and in the interest of Company. If Company reasonably believes that a conflict of interest arises in regard to Employee's circumstances, Company may ask Employee to choose either to discontinue Employee's other engagement, or to resign from Company immediately. Specific activities which are in violation of Company's Policy on conflict of interest include:



**2.7.1** Having significant shareholding or interest, or holding directorship and executive position, in any entity that carries on any competing business;

**2.7.2** Having significant shareholding or interest, or holding directorship and executive position, in any entity where: (i) that entity is a major supplier to Company and Employee is in a position to influence decisions on procurement from that entity or the pricing thereof; or (ii) that entity has substantial business dealings with any supplier to Company and Employee is in a position to influence decisions on procurement from that supplier or the pricing thereof. (In this regard, an employee is deemed to have interest in an entity by virtue of Employee's spouse having significant shareholding or interest or holding directorship in that entity, unless the contrary is explained to the satisfaction of the CEO and written approval is obtained.). Company may selectively require Employee to declare in writing his shareholding, deemed interest or directorship in other business entities and to constantly notify the Company of any changes to Employee's declaration;

**2.7.3** Misusing any information of Company for personal gain; unauthorized divulging of confidential information in breach of confidentiality obligations (whether or not for personal gain); discussing the prices, costs, sales or the like with any competitor of Company or their employees;

**2.7.4** Accepting or offering gifts or payments-in-kind of considerable value, excessive or extravagant entertainment, or any form of favor or gratification which is considered objectively to be extraordinary, from or to any business associates or customers of Company;

**2.7.5** Borrowing from or lending to any business associates or customers of Company (whether or not at commercial interest rates);

**2.7.6** Making any unlawful agreement with any business associates or customers of Company. An unlawful agreement includes, but is not limited to, an agreement that defrauds or deceives the Company; or

**2.7.7** Initiating or approving Company actions for personal reasons (i.e., not based on objective merits of the matter) affecting the rewarding or punishment of any subordinates in the employ of Company or the recruitment of any applicants, where there is or appears to be a personal involvement. Violation of this Company Policy against conflict of interest is a serious misconduct and may result in summary dismissal of the Employee.

3. **REMUNERATION**

**3.1.** **Compensation:** In consideration of the services rendered by Employee to Company hereunder, Company shall pay to Employee a monthly salary and bonus(es), if any, in accordance with Exhibit A. If employed as a Customer Support or Sales Employee, in addition to the monthly salary received, the Customer Support or Sales Employee may be entitled to such additional revenue target bonus in accordance with Exhibit C. The revenue target bonus shall not apply to other types of employees.

**3.2.** **Overpayments:** Employee acknowledges and agrees that Employee must reimburse Company for overpayments. Further, Employee acknowledges that the Company may charge any overpaid remuneration against future payments.



**3.3. Taxes:** Payment of taxes and or the withholding thereof shall be in accordance with the local laws of the country of the Place of Employment.

**4. SECONDARY OCCUPATIONS:** Employee shall devote Employee's entire working capacity to Company and in promoting Company's interests. Any secondary occupation or active participation in other commercial or charitable enterprises, whether with or without remuneration, which, in Company's opinion, detrimentally affects the interests of Company, requires the prior written approval of Company.

**5. CONFIDENTIALITY/RETURN OF DOCUMENTS**

**5.1 Definition of Confidential Information:** "Confidential Information" refers to any information received by or in any way communicated to Employee, whether from or by any other employee or officer of Company, its parent company, any subsidiary, or any affiliated company, relating to the affairs of Company, including, but not limited to, any information on operations, procedures, technical capability, financials, budgets, plans, licenses, vendors and suppliers, customer profiles, costing and pricing, market opportunities, customer lists, supplier lists, strategies, business data and analyses, and trade secrets, that is identified as confidential or is by its nature obviously privileged or confidential.

**5.2 Duty to Protect Confidential Information:** During the Employment, Employee shall treat as strictly confidential all Confidential Information of which Employee obtains knowledge during the Employment. Employee may only use the Confidential Information solely for the purpose for which the Confidential Information is communicated to Employee in the performance and discharge of Employee's duties. Employee shall not divulge or distribute Confidential Information to any third party other than other employees of Company working jointly with Employee on a matter and who have the need to know such Confidential Information. Employee shall store and secure the Confidential Information in such a way as to restrict access and prevent unauthorized access, in adherence to any security procedure as may be laid down by Company. Under no circumstance shall Employee be permitted to make use of the Confidential Information for personal gain or to the disadvantage of Company. Employee shall notify Employee's superior of any unauthorized access or misuse of the Confidential Information by any person as soon as Employee becomes aware of the same.

**5.3 Return of Documents:** Employee shall at any time during the Term and/or upon expiration or termination of this Agreement, upon request, return to Company all documents and data carriers in Employee's possession which relate to Company or to any of Company's affiliated entities. Such documents and data carriers shall include: notes, reports, memoranda, records, files, drawings, protocols and other similar documents (as well as copies or other reproductions thereof). The Employee shall also ensure that any soft copies of the Confidential Information are completely deleted and purged from all Employee's computers after the files have been reproduced/ transferred to other authorized employees. Employee acknowledges that the documents referred to above are the sole property of Company or any subsidiary or other affiliated entity. Further, Employee shall not remove any Confidential Information from the Company's premises. For the purpose of clarity, Employee has no right to retain these documents.

music-group.com



**5.4 Duration:** Employee's obligations of confidentiality set out in this Agreement shall survive the termination of this Agreement. Employee shall continue to keep the Confidential Information confidential even after the period of Employment without limit in point of time, except in respect of such part of information that ceases to be Confidential Information.

**5.5 Remedies:** Employee acknowledges that the Confidential Information is of a special, unique and invaluable nature, such that an award of damages or an account of profits would be inadequate compensation in the event of breach of this Agreement. Company is entitled to seek injunctive relief to restrain any act of breach or threatened breach, in addition to any other rights and remedies available at law.

6. **COPYRIGHT AND OTHER INTELLECTUAL PROPERTY ("IP")RIGHTS**

    **6.1 Assignment of IP Rights:** Employee hereby assigns to Company the exclusive right of use and exploitation, unrestricted in time, territory and content, of all works protected or protectable by copyright or any other intellectual property rights, which Employee creates during the Employment, insofar as they relate to Employee's duties under this Agreement. The assignment of the use and exploitation rights includes:

    **6.1.1** The right to copy, distribute and exhibit any works in all known media, including the Internet, and the right of recitation, performing, presenting and broadcasting; and

    **6.1.2** The authorization to revise the works and to issue licenses to third parties.

    **6.2 Unauthorized Use of IP:** Employee shall refrain from using, either by Employee or through Company's affiliated subsidiaries or partners, any inventions, computer programs and corresponding documentation or any other licensable products that were purchased, licensed or obtained in any way from a third party without first informing Company or giving Company an opportunity to inspect such works. Any breach of this commitment may lead to a claim for damages by Company and may result in immediate termination of this Agreement. Any information received by or communicated to the Employee from or by Company, its parent company, any subsidiary, or other affiliated company remains at all times the sole property of Company, its parent company, any subsidiary, or other affiliated company, respectively. The Employee may not reproduce any part of the information or materials in any form or manner (including saving electronically in Employee's personal storage medium) without written authorization of Company.

    **6.3 Statement of Origin:** Regarding the work results produced by Employee, the Company may require a statement of Employee which identifies and acknowledges the origin of Employee's work results.

7. **TERM AND TERMINATION:** The Employment shall be for an indefinite period **("Term")** unless terminated for grounds as stated in the Handbook. An Employee under probationary status may be terminated within the "**Probationary Period**" stated in Exhibit A, for grounds provided in the Handbook.



**10.4 Non-Disparagement Clause:** Employee hereby agrees that Employee shall not make any disparaging remarks concerning Company's actions, or perceived omissions, regarding this Agreement or otherwise take any action that would disparage or cast doubt upon the business acumen or judgment of Company. Further, Employee acknowledges that Company's business and reputation are of a special, unique, and extraordinary character, which gives Company a particular value, the loss of which cannot reasonably be compensated in damages in an action at law.

**10.5 Invalidity:** If any provision of this Agreement is or becomes wholly or partially invalid, the validity of the remaining provisions of this Agreement shall not be affected. The invalid provision shall be deemed to be replaced by a statutorily feasible provision which economically most closely reflects the purpose of the invalid provision. This shall also apply in the event that the Agreement contains any omissions.

**10.6 Others:** No failure or delay on the part of any of the parties hereto in exercising any power or right hereunder shall operate as a waiver thereof nor shall any single or partial exercise of such right or power preclude any other or further exercise of any other right or power hereunder. All correspondences between the parties hereto shall be in the English language medium. Each provision of this Agreement shall be construed separately and independently from each other. Accordingly, if any provision of this Agreement is found to be unenforceable, the remainder shall be deemed modified to the limited extent required to permit its enforcement in a manner that most closely approximates the intention of the parties as expressed herein. This Agreement shall inure to the benefit of and be binding upon the Employee hereto and his respective legal personal representatives, heirs, executors, administrators or successors.

| AUTHORIZED SIGNATORY | EMPLOYEE |
|---|---|
| **Print Name:** | **Print Name:** |
| **Signature:** | **Signature:** |
| **Title:** | **Title:** |
| **Date:** | **Date:** |



# EXHIBIT A

## (GENERAL TERMS OF EMPLOYMENT)

| COMPANY | |
|---|---|
| COMPANY ADDRESS | |
| EMPLOYEE NAME<br>*(LAST NAME First Name)* | |
| EMPLOYEE ADDRESS | |
| PLACE OF EMPLOYMENT | |
| TITLE | |
| COMMENCEMENT DATE | |
| SALARY | |
| TARGET BONUS | |
| FLSA CLASSIFICATION | |
| PROBATIONARY PERIOD | |
| CHOICE OF LAW | |
| CHOICE OF FORUM | |
| LEAVE | paid vacation days per annum |

| AUTHORIZED SIGNATORY | EMPLOYEE |
|---|---|
| Print Name: | Print Name: |
| Signature: | Signature: |
| Title: | Title: |
| Date: | Date: |



# EXHIBIT B

*(JOB DESCRIPTION)*

*(See Attached)*